```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

STANLEY E. JOHNSON,
                         Petitioner,

          v.                         CASE NO. 04-3264-RDR

JAMES W. HARRISON,
                         Respondent.

## MEMORANDUM AND ORDER

This is a petition for writ of habeas corpus, 28 U.S.C. 2241, filed by a former member of the United States Army who is a prisoner at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. Leave to proceed in forma pauperis was granted, and an order to show cause issued. Respondent filed an Answer and Return, and petitioner filed a Traverse. Having considered all the materials filed, the court finds as follows.

**FACTS**

Petitioner was convicted in 1982 by general court-martial of rape, forcible sodomy, robbery and attempted murder. He is serving a 35 year sentence. Petitioner directly appealed his convictions to military appellate courts. On appeal he claimed the evidence was insufficient as a matter of law to support the military judge's finding that he did not lack capacity due to mental illnesses. He also claimed the evidence was insufficient

to support the findings of guilty of robbery.

The United States Court of Military Review issued a Memorandum Opinion dated June 26, 1984. Therein the court recited the circumstances of the offenses including that on April 15, 1982, petitioner talked the victim, a friend and neighbor, into going into a heavily wooded area purportedly to obtain a part from an abandoned car. He then, over the course of 75 minutes, struck her on the head with a rock, bound her with tape, orally sodomized her by force, raped her, stabbed her with a small pocket knife approximately 20 times, cut her throat from ear to ear, and struck her several times with a log. While she was lying on the ground bleeding, he released the handbrake on the 25-passenger bus she had driven to the area and attempted to push it over her. The victim told Johnson she had dropped the keys to the bus in the woods during the assault. Johnson looked in the victim's purse and took it with him into the woods to look for the keys to the bus. The victim then took the keys from her pocket, managed to crawl into the bus, and drove to safety. United States v. Johnson, CM 443114, Docket No. 50,384/AR (ACMR June 26, 1984, unpublished).

**CLAIMS**

In his Petition before this court, Johnson claims as ground one: denial of due process in that the evidence was "insufficient

2

as a matter of law to support the military judge's finding that the appellant did not lack substantial capacity as a result of his mental illnesses." The "facts" he alleges in the Petition in support of this claim are merely a statement of law on competency claims as involving either substantive or procedural due process. As ground 2, petitioner states he was denied due process. In support, he alleges only that the evidence was insufficient to support findings of guilty of the specification alleging robbery.

**STANDARDS OF REVIEW**

It is well settled that a federal court has limited authority to review court-martial proceedings. The scope of review is initially limited to determining whether the claims raised by the petitioner were given full and fair consideration by the military courts. <u>Lips v. Commandant, United States Disciplinary Barracks</u>, 997 F.2d 808 (10th Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1091 (1994). If the issues have been given full and fair consideration in the military courts, the district court should not reach the merits and should deny the petition. <u>Id</u>; <u>Burns v. Wilson</u>, 346 U.S. 137, 142 (1953). If an issue is brought before the military court and is disposed of, even summarily, the federal habeas court will find that the issue has been given full and fair consideration. <u>Watson v. McCotter</u>, 782 F.2d 143, 145 (10th Cir.), <u>cert</u>. <u>denied</u>, 476 U.S. 1184 (1986); <u>Lips</u>, 997 F.2d

at 821 FN2; Ingham v. Tillery, 42 F.Supp.2d 1188 (D. Kan.), aff'd, 201 F.3d 448 (10th Cir. 1999, Table).  "[I]t is not open to a federal civil court to grant the writ simply to re-evaluate the evidence."  Burns, 346 U.S. at 142; Khan v. Hart, 943 F.2d 1261, 1263 (10th Cir. 1991).

**DISCUSSION**

    **I.    LACK OF MENTAL CAPACITY**

Respondent, in his Answer and Return, asserts petitioner is not entitled to relief in this court because the military courts fully and fairly considered his claims.  The first factual allegations made in support of petitioner's claim regarding his alleged mental incapacity are in his Traverse.  Therein, Johnson states the defense presented at his court-martial "was that petitioner was suffering from a severe mental disease which rendered him incapable of conforming his conduct to the requirements of the law."  He then discusses the evidence presented at trial in detail quoting much of the record.  He summarizes the qualifications and testimony of Dr. Stuen, the psychiatrist who examined him 6 times for a total of 7 hours and was a witness for the defense.  Dr. Stuen testified he had not made a final diagnosis of petitioner's condition based only on their interviews, but waited for the results of psychological tests.  Dr. Cripe conducted the tests, and after seeing the

results, Dr. Stuen concluded petitioner was suffering from "schizophrenia, undifferentiated type." Traverse (Doc. 9) (hereinafter T.) at 7. Petitioner states Dr. Stuen testified it was his opinion Johnson was "had a psychotic episode" at the time of the incident. Id., citing Record of Trial (ROT) at 207, 212-13. Johnson also alleges Dr. Stuen testified that an "anxiety-provoking situation," such as that created when Johnson's "distorted sense of reality caused him to believe he and SP4 Moorer were" having a "consensual sexual affair" and he was "unable to perform sexually," "could result in a 'psychotic episode'." T. at 8. Stuen further testified that such an episode could be marked by violent, bizarre activity.

The defense also put into evidence the deposition of Dr. Cripe, the clinical neuropsychologist who had performed tests on petitioner requested by Dr. Stuen. Therein, Dr. Cripe discussed the results of the tests including his findings that Johnson had "solid, average, intellectual abilities" with no intellectual impairment, but also "significant psychological problems." T. at 15, citing Cripe Deposition (hereinafter D.) at 15-16. He found Johnson "consistently demonstrated" all four of the "cardinal indicators" of "thought disorder" and schizophrenia. T. at 16. His professional judgment was that "it was 'highly unlikely' Johnson has a "clear cut capacity to be aware [of] and [an] understanding exactly of the implications" of his actions on

15 April 1982, Id., citing D. at 30-31.

Petitioner alleges the Government called Dr. Thompson as a rebuttal witness. This psychiatrist testified he had conducted 3 hours of interviews of Johnson and as a result had diagnosed him as suffering from a mental disease or defect, namely both a "schizotypal personality disorder" and an "atypical dissociative disorder." T. at 17. Dr. Thompson admitted on cross-examination that someone with these two disorders could have psychotic episodes when experiencing stress during which he could lack substantial capacity. T. at 18, citing ROT 273, 279-80. While his diagnosis was said to be "in 'remarkable agreement' with that of Dr. Stuen," Dr. Thompson opined that on the day of the offenses, Johnson "did not lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law," T. at 17, citing ROT 264-65. He stated Johnson "seemed to understand . . . what was going on" during the attack. Id., citing ROT 265. All 3 experts agreed that Johnson's disorders had existed long before he was tested.

Approximately ten rebuttal witnesses testified they knew Johnson for from 4 months to over 2 years, and most believed he had not acted in any bizarre or crazy fashion. In surrebuttal, the defense offered Johnson's neighbors, Mr. and Mrs. Clark, as witnesses who testified Johnson had come to their home for no

6

reason and sat in their house mumbling, and that Mrs. Johnson had told Mrs. Clark about Johnson's strange actions including his crying without explanation the night before the crimes.

It could not be more apparent that petitioner makes the identical arguments before this court that he presented on appeal to the military courts[1]. In his Traverse, his Assignment of Errors and his Brief to the military appellate courts, petitioner made the same arguments. He cited the applicable test for insanity:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacks substantial capacity to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law.

T. at 19, citing Para. 120b, Manual for Courts-Martial, United States (1969)(Revised Edition)(MCM 1969); see also A&R, Attach. 9, Brief (hereinafter Brief) at 31-32. Petitioner argued, "the facts of the instant case demonstrate that the government failed to meet its burden of proving beyond a reasonable doubt" that Johnson was operating "with the 'substantial capacity' necessary for him to be considered sane under military law." As support, petitioner alleged there was no disagreement among the 3 experts

---

[1] The United States Army Court of Military Review, in its Memorandum Opinion dated June 26, 1984, Answer & Return (Doc. 8) (hereinafter A&R), Attach. 8, stated: Appellant seeks reversal . . . of the trial judge's ruling concerning the appellant's mental responsibility at the time of the alleged offenses. He also contends that the robbery conviction must be set aside because the evidence fails to support the 'force and violence' element of proof." Id., at 1.

7

at his trial that he suffered from severe mental disorders. Petitioner summarized the "only two questions" at his trial as "whether petitioner's mental disorders were personality disorders or psychoses, and whether as a result of those disorders he was not substantially capable of understanding the criminality of his actions on April 15 or of controlling those actions." Id. Petitioner then asserted that since all the experts agreed he suffered from mental disease or defects, there was actually only one issue for the judge - whether or not Johnson lacked substantial capacity. Petitioner further argued that "the evidence of both the experts and the lay witnesses" was "wholly inconsistent with the judge's apparent conclusion that no reasonable doubt existed as to the issue of substantial capacity." Petitioner complained the military judge "apparently chose to reject the opinions" of Dr. Stuen and Dr. Cripe and instead, "relied upon the opinion of Dr. Thompson." He contended there was "simply not enough evidence to convince a reasonable finder of fact" to disregard the testimony of Dr. Stuen and Dr. Cripe, (Id., T. at 20, Brief at 32), and the weight of the evidence "lies heavily on the side of a finding that the Petitioner lacked substantial capacity." T. at 22. In his Brief, petitioner had argued that the evidence was "overwhelmingly in favor of the defense." Brief at 38, FN5). In support, he alleged Dr. Stuen was more experienced and spent 7

8

instead of 4 hours interviewing Johnson, and Stuen's opinion was better qualified and most consistent with all the other factual testimony at trial. Petitioner also claims he was incompetent at trial and during the appellate review process "as evidenced by the record of trial." He asserts his due process rights were violated "once all three doctors had concluded (he) was and still is suffering from severe mental diseases."

Respondent presents a different side of the evidence. He provides the following excerpt of Dr. Stuen's testimony:

> It's extremely easy to be a witness where . . . there's a clear cut diagnosis, it's either a malingered situation, or a clear-cut psychosis. There's no problem. It's when you get into these borderline situations where the problems arise. And this is a borderline situation.

A&R, ROT at 234. Respondent also provides this excerpt of Dr. Stuen's testimony in answer to a question from defense counsel:

> I would agree; given his diagnosis; given certain things that he described prior to the event; that-ah-there was some degree of impairment; but I'd also say that I think he basically knew what was going on, and he basically knew the implications of his actions."

Id., ROT at 283.

The court finds petitioner is not entitled to relief on this claim for 2 main reasons. First, it is patently clear from the excerpts of the record provided that this claim was presented to and fully and fairly considered by the military courts. In considering the exact claims presented in the instant Petition,

9

the military appellate court stated,

> The expert witnesses were in substantial agreement that the appellant was suffering from a mental disease or defect on that date, but they differed as to whether he was nevertheless mentally responsible for his actions." Id. . . ."[V]irtually all of the lay testimony was supportive of the prosecution premise that the appellant had functioned normally in the past and that he was not legally insane.

The military court detailed its analysis:

> We have carefully considered all of the competent evidence of record in this case and, as appropriate, have taken into account evidentiary factors such as professional qualifications, training, education, opportunity to observe and report, temporal considerations, and similar matters affecting the weight of the evidence. We conclude that, whereas the appellant may have been suffering from a mental disease or defect and may have had a partial mental impairment on the date of the alleged offenses, such impairment was insufficient to absolve him of criminal responsibility for his conduct and actions . . . . Our conclusion that the appellant did not lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law is predicated in part upon the evidence that the appellant: on the morning of 15 April 1982, stated to a co-worker that the victim was "messing him around" regarding the sale of an automobile and that "he ought to kill the bitch"; devised and formulated a detailed plan to have the victim (who drove a military bus as a part of her assigned duties) drive to a wooded and somewhat secluded area of the military installation in order to minimize the likelihood of detection; took with him the weapon (small knife) and equipment (roll of green electrical tape) used in the assaults upon the victim; personally indicated to the victim that his action in orally sodomizing her were in furtherance of pre-existing desires; acceded to the victim's suggestion that he untie her so that the occupants of a helicopter which had twice circled above them would not be privy to any evidence of non-consensual contact between the two; repeatedly restated and re-evaluated his conclusion that he had to kill the victim in order to avoid being placed in jail for his actions; conveyed

> the notion that incarceration was to be avoided at all costs, not only for his own sake but for that of his children; took affirmative steps to conceal his crimes, e.g., furnished a parka to render less apparent and visible the victim's injuries and loss of blood; and, just prior to his apprehension, conducted himself in a rational and purposeful manner which was completely consistent with normalcy insofar as the cognitive and conformity aspects of the military insanity standard are concerned."

Id.  Petitioner does not show that an incorrect legal standard was applied at his court-martial or on appeal.  It is well settled that something more than a diagnosis of mental illness, even of schizophrenia, must be shown to establish legal insanity.

Second, in essence, Johnson asks this court to reevaluate the expert testimony and other evidence and declare it supported his defense of insanity rather than the prosecution's case for conviction.  This, the civilian court on federal habeas corpus clearly cannot do.  Burns, 346 U.S. at 142; Khan, 943 F.2d at 1263.

## II.  INSUFFICIENT EVIDENCE OF ROBBERY

In support of petitioner's claim that the evidence was insufficient to support his conviction of robbery, Johnson alleges the victim abandoned her purse in making her escape.  He thus asserts he was "left in control of" the victim's purse and his use of the money from it constituted larceny not robbery because his assaults of the victim were not tied to an intent to take her money.

11

Respondent provides excerpts of the victim's testimony at trial regarding the robbery of her purse. Moorer testified Johnson took her purse after the assaults when he was looking for the keys to the bus, that he took it with him into the woods to look for the keys, that she saw it in his hands and saw him looking into it, that she had $298 in cash in it, that she escaped in the bus while he was in the woods, and that she has not seen her purse since. Thus, petitioner does not dispute he took the purse and used the money, just that he did it "by means of force and violence" as charged for the offense of robbery.

The record plainly shows that the military courts fully and fairly considered this claim and found it to have no merit. Petitioner does not show that an improper legal standard was applied. Accordingly, it will not be reconsidered by this court. Moreover, petitioner does not convince this court of the merit of his claim. The excerpted testimony at trial sufficiently indicated the victim could have retained possession of her purse if she were not the victim of petitioner's assaults and that she was obviously overcome by violence or prevented by fear from seeking the return of her purse. See 10 U.S.C. 922.

For the foregoing reasons, the court finds that petitioner is not entitled to relief.

IT IS THEREFORE BY THE COURT ORDERED that this action is dismissed and all relief denied.

DATED:  This 16th day of June, 2005, at Topeka, Kansas.


                                    s/RICHARD D. ROGERS
                                    United States District Judge

13